UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFH HOLDING & ADVISORY, LLC, a Delaware limited liability company, AMIR HESHMATPOUR, an individual, STEVE RICHARDS, an individual, and DR. BESSIE (CHIA) SOO, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BRUCE STROEVER, an individual, JOHN BOOTH, an individual, STEPHEN LANEVE, an individual, BRET HANKEY, an individual, JAMES DELSHAD, an individual, and THE MUSCULOSKELETAL TRANSPLANT FOUNDATION, INC., a District of Columbia corporation,<br><br>Defendants,<br><br>and<br><br>BONE BIOLOGICS CORPORATION, a Delaware corporation,<br><br>Nominal Defendant. | Case No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>JURY TRIAL DEMANDED |

{00198927.14 / 2001.000}   1

Plaintiffs AFH Holding & Advisory, LLC, Amir Heshmatpour, Steve Richards, and Dr. Bessie (Chia) Soo (together, "Plaintiffs"), by and through their attorneys CKR Law LLP, allege as follows upon information and belief, except where stated to be on personal knowledge:

## **NATURE OF THE ACTION**

1. This action seeks relief on behalf of the minority interest holders of nominal defendant Bone Biologics Corporation ("Bone Biologics" or the "Company") from the oppressive conduct of the controlling shareholder and the Board of Directors, which is controlled by the controlling shareholder.

2. Specifically, after failing to appropriately manage the Company and locate financing on terms that would be fair to all shareholders, The Musculoskeletal Transplant Foundation, Inc. ("MTF"), the owner of 34.5% of Bone Biologics prior to the transaction, which closed on July 16, 2018, arranged for a sale of the control of Bone Biologics to then-minority interest holder, Hankey Capital LLC ("Hankey Capital"), at an unfair price and following an unfair process that severely diluted the interest of the minority interest holders, including Plaintiffs, while handing control of the Company to one shareholder and his affiliates.

3. Specifically, as a result of the combination of a securities purchase by Hankey Capital, the re-pricing of its prior convertible notes (the "Conversion Price Amendment"), and a 1 for 10 reverse stock split, Hankey Capital and its principal and affiliate Don Hankey increased their ownership of the Company from approximately 21% to over 58% (and have the option by converting their prior convertible notes and new convertible notes to over 80%), effecting a change in control of the Company (the "Transaction").

4. Moreover, Don Hankey was named Chairman of the Company on the closing of the Transaction.

5. By letter dated July 8, 2018, Plaintiffs demanded that the Board halt the proposed Transaction and look for alternative sources of funding (the "Demand Letter"). *See* a true and correct copy of the Demand Letter attached hereto as Exhibit A. In response, the Board did not claim that the Transaction was substantively or procedurally fair, but merely stated that it was the only option.

6. If indeed this Transaction was the Company's only option, it was the cumulative effect of numerous poor decisions or ill-advised actions or inactions combined with the lack of sound management and leadership of Defendant MTF and its three board appointees (Bruce Stroever, Stephen LaNeve, and John Booth) (together, the "MTF Defendants") that brought the company to this fatal point. The MTF Defendants, among other things, pushed the founders out of the company, failed to provide adequate transparency to shareholders and investors, and were unwilling to provide the necessary access to, or cooperate with, the requisite due diligence by other potential investors. In short, if the Transaction with Don Hankey and his affiliated entity was the only option it is because the MTF Defendants made it so.

7. On July 19, 2018, three days *after* the Transaction was set to close, the Company filed a Form 8-K stating that effective July 16, 2018, the closing date for the Transaction, the Company and Hankey Capital had entered into an Amendment to the Purchase Agreement materially changing the terms of the stock purchase portion of the Transaction. The Company failed to make a prior disclosure of the material changes to the terms of the stock purchase portion of the Transaction and thus the disclosure to shareholders in the Rights Offering was incomplete at best.

8. It is apparent that the Board's myopic vision that led them to agree to the unfair process and Transaction with Hankey Capital and Don Hankey has not been corrected. Thus,

Plaintiffs bring this Complaint to recover their losses as a result of the Board's failure to ensure that this change in control Transaction was entirely fair to all of the Company's shareholders.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. 1331 because the claims asserted in this action arise under Section 14(c) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Regulation 14c-6 promulgated thereunder. The Court has exclusive jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims.

10. Venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

11. Plaintiff AFH Holding & Advisory, LLC is a Delaware limited liability company and is a minority shareholder of Bone Biologics.

12. Plaintiff Amir Heshmatpour is an individual minority shareholder of Bone Biologics and is a citizen of the State of California.

13. Plaintiff Steve Richards is an individual minority shareholder of Bone Biologics and is a citizen of the State of California.

14. Plaintiff Dr. Bessie (Chia) Soo is an individual minority shareholder of Bone Biologics and is a citizen of the State of California.

15. Nominal Defendant Bone Biologics is a Delaware corporation with a principal place of business at 2 Burlington Woods Drive, Suite 100, Burlington, Massachusetts 01803.

16. Defendant Bruce Stroever is a director of Bone Biologics and served as the C.E.O. of MTF until June 29, 2018.

17. Defendant John Booth is a director of Bone Biologics and MTF board designee.

18. Defendant Stephen LaNeve is a director of Bone Biologics and MTF Board designee.

19. Defendant Bret Hankey is a director of Bone Biologics.

20. Defendant James Delshad is a director of Bone Biologics.

21. MTF is a District of Columbia corporation with its principal place of business at 125 May Street, Suite 300, Edison, NJ 08837.

## STATEMENT OF FACTS

MTF pushed the founders out of the Company.

22. On or about March 23, 2017, Deina H. Walsh, the CFO of Bone Biologics, sent the Company's draft 10-K for the year ended December 31, 2016 to the directors, including, at that time, Plaintiff Chia Soo, for review.

23. On or about March 30, 2017, Plaintiff Soo responded that the draft 10-K included the untrue statement that there is cause for the Company to terminate the Founders Professional Service Agreement ("FPSA"). The Company and the founders continued to engage in discussions concerning whether the FPSA had been breached.

24. On or about April 12, 2017, all three founders sent an email to the Board of Directors of Bone Biologics, stating:

Dear BBC Board,

This is to let you know that all three Founders have been unilaterally terminated by Stroever without cause and without a vote from the full board.

> Despite agreement of the board to have management discuss with the Founders the conduct of the next set of pivotal large animal studies, this has not happened and the Founders have been kept in the dark.
>
> We do not agree with this manner of running the company from both a scientific and a corporate sense.
>
> Effective today, April 12, 2017, we (Ben and Chia) are resigning from the BBC Board – and all three of the Founders (Eric, Ben, and Chia) are resigning from the Scientific Advisory Board.
>
> Please take our information and publications off of the website.
>
> Eric, Ben, and Chia

25. Since the founders left active roles at the Company, MTF has not been successful in attracting sufficient, additional investor funds for continued research and development operations, other than the Transaction at issue.

<u>MTF, its Board appointees, and an interested director approved the Transaction with Don Hankey's affiliate that is destructive to minority shareholder value.</u>

26. On June 12, 2018, Bone Biologics disclosed in a Form 8-K dated June 11, 2018 ("June 8-K") and filed with the SEC that Bone Biologics and Hankey Capital entered into a Securities Purchase Agreement ("Purchase Agreement") dated as of June 11, 2018.

27. The June 8-K states that under the Purchase Agreement, Hankey Capital agreed to purchase up to 3,869,979 shares of Bone Biologics Common Stock at a purchase price of $1.00 per share and up to $2,000,000 in principal amount of a convertible secured note (the "Note").

28. The June 8-K also states, in part, that the Note is convertible into shares of Bone Biologics Common Stock at the option of the holder at $1.00 per share and is secured by a security interest in all assets of Bone Biologics and a pledge of collateral shares in an amount sufficient to maintain a loan to value ratio of no greater than 50%.

29. The June 8-K further states that the closing of the Purchase Agreement is conditioned upon the completion of a reverse split of a ratio of 1 for 10 of Bone Biologics' outstanding common shares ("Reverse Split").

30. On June 25, 2018, Bone Biologics disclosed the Reverse Split in a Definitive Schedule 14C ("Schedule 14C").

31. The Schedule 14C states that as of June 8, 2018, Bone Biologics' board of directors and shareholders representing 66.28% of Bone Biologics' voting power approved the Reverse Split.

32. None of the Plaintiffs voted in favor of the Reverse Split, nor were they aware of the planned Reverse Split until the Company filed a Preliminary Schedule 14C indicating that the majority of the shareholders and the Board of Directors had approved it.

33. The members of the Board of Directors who voted in favor of the transaction include Don Hankey's son, Bret Hankey. Bret Hankey did not abstain from the vote in favor of the transaction with Hankey Capital. Bret Hankey is not a disinterested shareholder or a disinterested director in connection with the transaction with Hankey Capital. Bret Hankey is also the President of the Hankey Group and is the Vice Chairman and Executive Vice President of Westlake Financial Services, a member of the Hankey Group. The Hankey Group is an affiliate of Hankey Capital, the entity that benefited from the Transaction.

34. Thus, MTF and Don Hankey and his affiliates controlled the voting process as well as the vote in favor of the Transaction, including the Reverse Split.

35. The Schedule 14C states that as a result of the Reverse Split, each common stockholder in Bone Biologics will own a reduced number of shares of common stock and that, without taking into account fractional shares that will be rounded up to the nearest whole share,

the number of outstanding shares of common stock will be reduced from 44,537,403 shares to 4,453,740 shares.

36. The Schedule 14C states that the Reverse Split "will affect all of our common stockholders uniformly," but does not explain that as a result of the re-pricing of the prior convertible notes issued to Hankey Capital combined with the Purchase Agreement and additional note, Hankey Capital and Don Hankey, its principal, will substantially increase their percentage ownership of the Company, thereby diluting the other shareholders. The claim that all of the shareholders will be treated uniformly is a misrepresentation in light of the complete transaction.

37. The Schedule 14C further states that pursuant to the Purchase Agreement, Don Hankey, the CEO/Chairman of Hankey Group (an affiliate of Hankey Capital) will become the Chairman of the Board of Bone Biologics and the CEO of Bone Biologics will report to Don Hankey. Bruce Stroever will give up his Chairmanship upon close of the Transaction.

<u>The Company's SEC filings contain numerous material misstatements and omissions.</u>

38. The documents filed with the SEC by Bone Biologics in connection with the Transaction contain material misstatements and omissions.

39. Although the Transaction is contingent on a Rights Offering to existing shareholders to participate in the securities purchase, no offering memorandum has been filed with the SEC.

40. In addition, the Schedule 14C incorrectly states that Mr. Heshmatpour has voting and investment control over 2,742,393 shares of the Company owned by H&H Funding LLC.

41. Mr. Heshmatpour does not have voting or investment control over any of the shares of the Company held by H&H Funding LLC.

42. The documents filed with the SEC fail to disclose Mr. Hankey's ownership interest in, and control of, H&H Funding LLC.

43. As the sole Manager of H&H Funding LLC, Mr. Hankey is the sole member of H&H Funding LLC with voting and investment control.

44. There are discrepancies between the information about the Transaction provided in the June 8-K and the Schedule 14C filed on June 12, 2018.

45. Specifically, the June 8-K states that the proposed convertible secured note (i.e. the Note) will bear interest at the greater of the Prime Rate or 8.5% per annum. However, the Schedule 14C states that the Note will bear interest and be payable on a monthly basis at a rate equal to the greater of (i) the Prime Rate plus 4%, or (ii) 8.5%. There is a material difference between "Prime Rate" and "Prime Rate plus 4%."

46. The Rights Offering dated June 25, 2018, mailed to the Company's shareholders, fails to disclose the Conversion Price Amendment.

<u>Plaintiffs made a demand to the Board to halt the Transaction and the Board refused.</u>

47. On July 9, 2018, the Plaintiffs, through their counsel, made a demand on the Board that it halt the Transaction for the following reasons:

- In approving the Transaction, the Board of Directors has been derelict in performing its duty to seek the best value reasonably available to the stockholders of the Company.

- The Board of Directors did not obtain a fair valuation opinion to ensure that the Transaction was reasonably priced. Nor did the Board seriously consider alternate financing arrangements as proposed by Mr. Heshmatpour.

- The consents provided by the shareholders to the Board to move forward with the reverse stock split and, thus, the Transaction, did not represent the majority of disinterested shareholders. The consents provided included votes cast by Don Hankey and his affiliates, i.e. votes by parties interested in the Transaction, and should be discarded.

- The vote by the Board was procedurally defective because the Board was not disinterested. Bret Hankey, a member of the Board, is also the President of the Hankey Group and is the Vice Chairman and Executive Vice President of Westlake Financial Services, a member of the Hankey Group. The Hankey Group is an affiliate of Hankey Capital, the entity that benefited from the Transaction.

- The Board cannot meet the standard of showing that the Transaction was entirely fair, both in the price paid by Hankey Capital to become the controlling shareholder and the procedure followed by the Board to approve the Transaction.

- SEC filings, in connection with the Transaction, by the Company contain several misstatements and omissions.

- The Transaction is defective because it fails to comport with Delaware law concerning the proper way to address fractional share ownership.

- Section 4 of the Subscription Agreement (included with the Rights Offering Memorandum), the Company's Representations, Warranties and Covenants, states in part:

    (d) No action, suit or proceeding by or before any court or governmental agency, authority or body or any arbitrator involving the Company or its property is pending or, to the best knowledge of the Company, threatened that (i) could reasonably be expected to have a material adverse effect on the performance of this Agreement or the other Offering Documents by the Company or

> the consummation of any of the transactions contemplated hereby or thereby...

48. At least as of the date of the Demand Letter, the Company's representation in Section 4 of the Subscription Agreement was not accurate.

49. The Board did not submit an amended 8-K to address any of the deficiencies or other issues set out in the Demand Letter prior to the close of the Transaction.

50. Instead, on or about July 12, 2018, counsel to the Board, David L. Ficksman of TroyGould P.C., sent a letter stating that the Transaction is the only way for the Company to continue operations.

<u>The Company amended the Transaction on the closing date.</u>

51. On July 19, 2018, the Company filed a Form 8-K stating that effective July 16, 2018, the closing date for the Transaction, the Company and Hankey Capital had entered into an Amendment to the Purchase Agreement to provide that "in lieu of loaning the Company $2,000,000 at the closing, Hankey Capital will provide a credit facility to the Company of $2,000,000 to be drawn down by the Company upon notice to Hankey Capital" (the "July 8-K").

52. The July 8-K states that "[e]ach draw will be evidenced by a convertible secured note on the same terms" as previously disclosed in the June 8-K.

53. The stated purpose of the Amendment is "to reduce the interest expense to the Company," but the Amendment does not ensure that the interest expense to the Company will in fact be reduced because there is nothing preventing the Company from drawing down the full $2,000,000 all at once, which would cause the Company the same interest expense as previously contemplated.

54. The July 8-K also makes additional disclosures, including an acknowledgement that Don Hankey is the sole manager of the shares held by H&H Funding LLC.

55. Given that the Amendment materially changes the terms of the Rights Offering, the Rights Offering should have been amended and offered to the shareholders in advance of the close of the Transaction.

### Derivative Allegations and Demand Futility

56. This action is a shareholder derivative action brought pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.

57. Plaintiffs are shareholders of Bone Biologics, were shareholders of Bone Biologics at the time of the wrongdoing alleged herein, and have been shareholders of Bone Biologics continuously since that time.

58. This action is not a collusive one to confer on a court of the United States jurisdiction that it would not otherwise have.

59. Plaintiffs will fairly and adequately represent the interests of Bone Biologics and its shareholders in enforcing and prosecuting its rights.

### COUNT I
Violation of Section 14(c) of the Securities
Exchange Act of 1934 and Rule 14c-6

60. Plaintiffs hereby restate and reallege paragraphs 1 through 59 above.

61. As detailed above, Defendants caused to be issued, and participated in the issuance of materially false and misleading written statements and material omissions to shareholders that were contained in the Schedule 14C.

62. In issuing the Schedule 14C that contains misrepresentations and omissions in violation of Section 14(c) of the Exchange Act as set forth specifically above, Defendants have misled investors and put the Company at risk for liability for its violation of the securities laws.

63. Plaintiffs, on behalf of the Company, seek injunctive, declaratory and equitable relief for the Defendants' violations of Section 14(c) of the Exchange Act.

## COUNT II
Breach of Fiduciary Duty Against All Defendants

64. Plaintiffs hereby restate and reallege paragraphs 1 through 63 above.

65. As members of the Board of Directors, each individual defendant owed each plaintiff and the Company the fiduciary duties of care and of loyalty.

66. As a controlling shareholder, MTF owed each plaintiff the fiduciary duties of care and of loyalty.

67. As explained above in detail, Plaintiffs have personal knowledge that Defendants did not fulfill their fiduciary duties owed to Plaintiffs to take steps to ensure that they received the best price for the change in control.

68. Defendants took no steps to ensure that the Transaction was fair to the minority interest holders.

69. No fairness valuation was undertaken.

70. Upon information and belief, Don Hankey presented the terms of the Transaction and the Board agreed to those terms as presented.

71. Don Hankey and his affiliate, Hankey Capital, did not pay a premium for obtaining control of the Company.

72. The Board did not present other options for financing to the shareholders.

73. The Transaction was not approved by a disinterested Board.

74. The Transaction was not approved by a majority of disinterested shareholders.

75. Even after receiving the Demand Letter, Defendants refused to re-evaluate the terms of the deal and ensure that the Transaction was entirely fair, procedurally and substantively prior to closing the Transaction.

76. Defendants, jointly and severally, breached their fiduciary duties owed to Plaintiffs.

77. Plaintiffs have suffered significant damages as a direct and proximate result of Defendants' conduct.

### COUNT III
Rescission of Reverse Stock Split Against All Defendants, Except MTF

78. Plaintiffs hereby restate and reallege paragraphs 1 through 77 above.

79. The Reverse Stock Split was not approved by a majority of disinterested shareholders and, thus, was not properly authorized.

80. The Reverse Stock Split must be rescinded.

### COUNT IV
In the Alternative, Rescissory Damages Against All Defendants, Except MTF

81. Plaintiffs hereby restate and reallege paragraphs 1 through 80 above.

82. The Reverse Stock Split was not approved by a majority of disinterested shareholders and, thus, was not properly authorized.

83. If the Court is unable to rescind the Transaction, in the alternative, Plaintiffs are entitled to rescissory damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. Directing Defendants to account to Bone Biologics for all damages sustained by the Company by reason of the wrongs alleged herein;

B. Directing Bone Biologics to take all necessary actions to reform its corporate governance and internal procedures to comply with applicable laws and protect the Company and its shareholders form a recurrence of the events described herein, including, but not limited to, a shareholder vote resolution for amendments to Bone

Biologics By-Laws or Articles of Incorporation and taking other such action as may be necessary to place before shareholders for a vote on corporate governance policies;

C. Directing rescission of the reverse stock split or, in the alternative, awarding Plaintiffs rescissory damages in an amount to be calculated at trial but no less than an amount equal to 24.27% of the value of the Company to account for the loss in shareholder caused by the Transaction;

D. Awarding to Bone Biologics restitution from the Defendants and disgorgement of all profits, benefits, and other compensation obtained by the Defendants.

E. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, experts' fees, and expenses; and

F. Granting such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all claims so triable.

Dated: New York, New York
July 31, 2018

CKR LAW LLP

By: _____

Rosanne Elena Felicello, Esq.
1330 Avenue of the Americas, 14th Floor
New York, NY 10019
Tel. (212) 259-7300
*Attorneys for Plaintiffs*