UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFH HOLDING & ADVISORY, LLC, AMIR HESHMATPOUR, STEVE RICHARDS, and DR. BESSIE (CHIA) SOO, <br><br> Plaintiffs, <br><br> v. <br><br> BRUCE STOEVER, JOHN BOOTH, DONALD R. HANKEY, SR., BRET HANKEY, JAMES DELSHAD, STEPHEN LANEVE, THE MUSCULOSKELETAL TRANSPLANT FOUNDATION, INC., and HANKEY CAPITAL LLC, <br><br> Defendants, <br><br> BONE BIOLOGICS CORPORATION, a Delaware corporation, <br><br> Nominal Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:18-cv-11612-ADB <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

BURROUGHS, D.J.

AFH Holding & Advisory LLC, Amir Heshmatpour, Steve Richards, and Dr. Bessie (Chia) Soo (collectively, "Plaintiffs") bring this putative class action as minority shareholders of Bone Biologic Corporation ("BBC") against six current and former directors of BBC, the company's previously controlling shareholder, Musculoskeletal Transplant Foundation, Inc. ("MTF"), and the company that became BBC's controlling shareholder through a June 2018 transaction, Hankey Capital LLC ("Hankey Capital") (collectively, "Defendants"). Plaintiffs allege that Defendants breached their fiduciary duty ("Count II") and aided and abetted that breach of fiduciary duty ("Count III") when BBC's board approved an unfair June 2018

transaction that was favored by MTF and that effectively transferred control of BBC to Hankey Capital while severely diluting Plaintiffs' equity in BBC. [ECF No. 36 ("Amended Complaint" or "Am. Compl.") ¶¶ 3, 42]. Additionally, Plaintiffs claim that Defendants violated Section 14(c) of the Exchange Act of 1934 ("Section 14(c)"), 15 U.S.C. § 78n(c), and Rule 14c-6, 17 C.F.R. § 240.14c-6, when they failed to provide shareholders with an information statement before obtaining consent from the holders of a majority of the voting power for the transaction with Hankey Capital, and by issuing a Schedule 14C related to the transaction that contained material misrepresentations and omissions after the transaction had been approved ("Count I"). Plaintiffs seek rescission of a reverse stock split ("Count IV") and rescissory damages ("Count V"). Presently before the Court are Defendants' motions to dismiss for failure to state a claim. [ECF Nos. 39, 41]. For the reasons discussed herein, the motions to dismiss [ECF Nos. 39, 41] are **GRANTED IN PART**, and the case is **DISMISSED** with leave to file the state law claims in courts of appropriate jurisdiction.

I. BACKGROUND

The following facts are drawn from the Amended Complaint, the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from documents referred to in the Amended Complaint and from documents whose authenticity is not disputed by the parties. See Alvarez-Mauras v. Banco Popular of P.R., 919 F.3d 617, 622 (1st Cir. 2019).

BBC is a Massachusetts-based biotech startup that is incorporated in Delaware. See Am. Compl. ¶¶ 6, 42, 57. BBC has developed a product called NELL-1, which is a recombinant human protein growth factor that is essential for normal bone development and has potential uses

in treating osteoporosis and trauma. See id. ¶¶ 8, 59. Prior to the June 2018 transaction with Hankey Capital at issue here, MTF was BBC's largest investor and stockholder, holding approximately 35% of BBC's outstanding shares after having invested about $12 million. Id. ¶ 10. Defendant Bruce Stroever ("Stroever") is a director of BBC who was designated by MTF to serve on the board. Id. ¶ 43. Defendants Stephen LaNeve ("LaNeve") and John Booth ("Booth") are also directors of BBC who were designees of MTF. Id. ¶¶ 44–45. Defendant James Delshad ("Delshad") is a former director of BBC. Id. ¶ 46. Defendant Don Hankey is currently a director and the chairman of BBC, the president of Defendant Hankey Capital, and the father of Defendant Bret Hankey, who is also a director of BBC. Id. ¶¶ 47–49. There is incomplete diversity amongst the parties, and the Plaintiffs claim only that the Court has federal question jurisdiction. Id.

Plaintiffs allege that, in the years leading up the June 2018 transaction, MTF became an increasingly controlling and dominant shareholder and that its relationship with Plaintiffs and the founders of BBC deteriorated due to serious mismanagement and a lack of transparency. See id. ¶¶ 79–90. In addition to its equity interest in BBC, MTF owned and controlled a product called DBX®, a proprietary form of demineralized bone matrix that can function as a companion product to NELL-1. Id. ¶ 21. Plaintiffs claim that MTF became more interested in BBC and NELL-1 securing an ongoing market for DBX® than it was in maximizing the value of BBC's common shares. See id. ¶¶ 23–27. The transaction with Hankey Capital ensured that BBC would be able to continue developing NELL-1 and thereby promote the market for DBX® to the benefit of MTF.[1]

---

[1] Plaintiffs assertions that MTF's interest in DBX® created a conflict of interest or somehow caused it to stand on both sides of the transaction between BBC and Hankey Capital do not

3

On June 12, 2018, BBC filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC"), disclosing that BBC and Hankey Capital had entered into a securities purchase agreement one day earlier. Id. ¶¶ 12, 106. Under the agreement, Hankey Capital was to buy up to $3,869,979 shares of BBC common stock at a purchase price of $1.00 per share and invest up to $2 million through a convertible secured note. Id. The Form 8-K further disclosed that the closing of the purchase agreement was conditioned on a reverse split of BBC common stock with a ratio of 1 for 10 of the company's outstanding shares. Id. ¶ 12. On the same day, June 12, 2018, BBC filed a preliminary Schedule 14C, disclosing that on June 8, 2018, without providing notice to all shareholders, the board had voted to proceed with the reverse stock split upon the written consent of a majority of its shareholders and had obtained written consent from the holders of 66.28% of the voting power. Id. ¶¶ 13, 108.[2]

BBC represented in its finalized Schedule 14C, which it filed with the SEC on June 25, 2018, that the reverse stock split would affect common shareholders uniformly, but the effect of the reverse stock split in conjunction with a re-pricing of convertible notes that had been issued to Hankey Capital, the securities purchase agreement, and the additional convertible note issued to Hankey Capital was to increase Don Hankey and Hankey Capital's ownership share of BBC to over 80%. Id. ¶ 18. The June 25, 2018 Schedule 14C also incorrectly indicated that Plaintiff

---

appear particularly compelling. The Court finds, however, that it is unnecessary to address the merits of that purported conflict of interest as it declines to adjudicate Plaintiffs' state law claims. The Court leaves those issues to whatever court ultimately handles the state court case.

[2] The June 12, 2018 Form 8-K and Schedule 14C also contained an error in that they stated different interest rates for the proposed convertible secured notes. See Am. Compl. ¶ 137.

4

Heshmatpour had voted 2,742,393 shares of BBC that were owned by H&H Funding LLC, which was controlled by Don Hankey. Id. ¶¶ 135–36.[3]

On July 19, 2018, BBC filed a Form 8-K with the SEC that disclosed that the company has entered into an amended securities purchase agreement dated June 11, 2018 with an effective date of July 16, 2018 that provided for a $2 million credit facility from Hankey Capital in lieu of the $2 million note that had been announced on June 12, 2018. Id. ¶ 15. That filing also announced the issuance of shares to Hankey Capital in accordance with the securities purchase agreement. Id. The completion of the transaction gave Don Hankey and Hankey Capital control of the company at a cost of approximately $5 million, which Plaintiffs claim was dramatically less than what that stake was worth. Id. ¶ 112. Defendants had valued BBC in the range of $100 million as recently as 2015, and Plaintiffs assert that the current valuation could be exponentially higher. Id. ¶ 115.

Plaintiffs claim that several board members had significant connections with MTF or Hankey Capital and therefore had conflicts of interest, yet the board did not take meaningful steps to ensure the procedural fairness of the transaction. See id. ¶¶ 10–11, 28, 30–31, 114, 115, 117. BBC did not hire an outside financial adviser, obtain an independent fairness opinion, establish a special committee of independent directors, or require a majority of independent shareholders to approve the transaction. Id. ¶¶ 28–29, 113. Plaintiffs further allege that as a result of the lack of procedural safeguards, the board's independence was compromised. For example, Don Hankey's son Bret Hankey, who also has ties to Hankey Capital in his own capacity, was allowed to vote in favor of the transaction as a director of BBC. Id. ¶ 30.

---

[3] BBC's July 19, 2018 Form 8-K acknowledged that Don Hankey is the sole manager of the shares held by H&H Funding LLC. Am. Compl. ¶ 142.

Plaintiffs filed this action on July 31, 2018 and amended their complaint on February 8, 2019.  See [ECF No. 1]; Am. Compl.  On February 22, 2019, BBC, Booth, Delshad, Bret Hankey, Laneve, and Stroever filed a motion to dismiss, [ECF No. 39], and MTF filed a separate motion to dismiss, [ECF No. 41].  On March 9, 2019, Plaintiffs filed their oppositions to those motions.  [ECF Nos. 43, 44].  On March 22, 2019, BBC and the current and former director defendants filed a reply in support of their motion to dismiss.  [ECF No. 49].

## II. STANDARD OF REVIEW

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. P.R., 655 F.3d 61, 72 (1st Cir. 2011)).  The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. at 80 (first quoting Fed. R. Civ. P. 8(a)(2), then quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80

(citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

In addition to the requirements of Rule 12(b)(6), under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), in a private action that is based upon an "untrue statement of a material fact" or an omitted "material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading," the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Where a cause of action requires a state of mind, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2); see also ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58–59 (1st Cir. 2008).

### III. DISCUSSION

The Court first addresses Plaintiffs' sole federal cause of action under Section 14(c). Because the Court finds that Plaintiffs have not sufficiently pled that claim, the Court then considers its jurisdiction and determines that the action should be dismissed.

A.  **Section 14(c) Claim**

Defendants argue that Plaintiffs cannot bring a claim under Section 14(c) because no private right of action for the violation of that section exists. [ECF No. 40 at 5–6]. The Court agrees.

Section 14(c) requires the dissemination of an information statement to shareholders prior to an annual or special meeting for which proxies are not solicited when information would be required to be disseminated if proxies were solicited. See 15 U.S.C. § 78n(c); Glenbrook Capital Ltd. P'ship v. Kuo, 525 F. Supp. 2d 1130, 1143 (N.D. Cal. 2007); Ciro, Inc. v. Gold, 816 F. Supp. 253, 269 (D. Del. 1993). Rule 14c-6 prohibits information statements that contain materially false information or omissions. See 17 C.F.R. § 240.14c-6. Neither Section 14(c) nor Rule 14c-6 expressly provides a private cause of action. Section 14(c) states:

> Unless proxies, consents, or authorizations in respect of a security registered pursuant to section 78l of this title . . . are solicited by or on behalf of the management of the issuer from the holders of record of such security in accordance with the rules and regulations prescribed under subsection (a) of this section, prior to any annual or other meeting of the holders of such security, such issuer shall, in accordance with rules and regulations prescribed by the Commission, file with the Commission and transmit to all holders of record of such security information substantially equivalent to the information which would be required to be transmitted if a solicitation were made . . . .

15 U.S.C. § 78n(c).[4]

---

[4] Rule 14c-6(a) provides:

> No information statement shall contain any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14c-6.

8

The Supreme Court has held that "[t]he central inquiry" in determining whether a private cause of action exists is whether "Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979). Alexander v. Sandoval, 532 U.S. 275, 288 (2001). Without statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter." Id. at 286–87. The Supreme Court has recognized an implied cause of action under Section 14(a) of the Exchange Act of 1934 ("Section 14(a)"), 15 U.S.C. § 78n(c), considering that Section 27 of the Exchange Act provided the district courts with jurisdiction to hear actions for "any liability or duty created by this chapter or the rules and regulations thereunder." See 15 U.S.C. § 78aa(a); see also Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 377 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 430–31 (1964). The Supreme Court has since cautioned that "the breadth of the right once recognized should not . . . grow beyond the scope congressionally intended." Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1102 (1991).

Whether the implied cause of action under Section 14(a), which covers circumstances where proxies are solicited, should be extended to cover circumstances where proxies have not been solicited has not been frequently litigated, and Plaintiffs cite no cases upholding a claim under Section 14(c).[5] Conversely, Defendants point to one case, Ciro, Inc. v. Gold, 816 F. Supp. 253 (D. Del. 1993), that held "no implied private right of action under [Section] 14(c) exists for

---

[5] In addition to the case law cited by the parties, the Court is aware of a 1974 case in which the Southern District of New York upheld an claim brought under Section 14(c). See Petersen v. Federated Dev. Co., 387 F. Supp. 355, 360 (S.D.N.Y. 1974) (denying motion for judgment on the pleadings on a claim seemingly alleging violations of Section 14(c) while noting that proof of causation may be difficult for plaintiff). That case predated the Supreme Court's clarification of the causation requirements for an action under Section 14(a), see Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1106 (1991), and its clarification of the plausibility requirement for a claim to proceed in accordance with Federal Rule of Civil Procedure 12(b)(6), see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

minority shareholders," 816 F. Supp. at 269–70; see [ECF No. 40 at 6; ECF No. 42 at 3]. Plaintiffs respond that in the only other case they have identified addressing the issue, Glenbrook Capital Ltd. Partnership v. Kuo, 525 F. Supp. 2d 1130 (N.D. Cal. 2007), the Northern District of California declined to explicitly hold that no cause of action under Section 14(c) existed. See [ECF No. 43 at 14]. Instead, the court held that the plaintiff minority shareholders had not plead a claim where they could not establish causation because they, as minority shareholders, were "seeking relief from a transaction that they apparently could not have prevented." 525 F. Supp. 2d at 1144.

The Court thinks it unlikely that the First Circuit would recognize an implied cause of action under Section 14(c) but declines to decide the issue because, even assuming that such a private cause of action exists, Plaintiffs have not plausibly pled causation or damages, which the parties seemingly agree would be required for that claim. The Supreme Court's decision in Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083 (1991), provides the causation requirement that would most likely apply. See Ciro, 816 F. Supp. at 269–70. The plaintiff in Virginia Bankshares argued that management had violated Section 14(a) by encouraging shareholders to support a merger and stating that the offered price was "high." 501 U.S. at 1088–89. Management at the acquired bank had elected to solicit proxies for the merger, even though the minority shareholders held only 15% of the shares and the bank could have completed the merger without soliciting proxies. Id. at 1088. The Supreme Court rejected a theory of causation premised upon speculation about what the directors would have done if they had been unable to acquire a majority vote of the minority shareholders. Id. at 1105–06. The Court reasoned that allowing such an action would allow protracted litigation over hazy issues with unreliable resolutions. Id. at 1106. The Court also declined to endorse a theory of causation that

rested on the loss of the plaintiff's ability to pursue an injunction where the plaintiffs had advanced a theory under which their rights as minority shareholders were not yet "irredressable under state law." Id. at 1108.

Here, Plaintiffs' theory of causation is flawed for the reasons discussed by the Supreme Court in Virginia Bankshares. 501 U.S. at 1099–1108. Plaintiffs seek injunctive, declaratory and equitable relief under Section 14(c) and Rule 14c-6 based on the theory that their ability to obtain injunctive relief was reduced by Defendants' failure to comply with Section 14(c) and Rule 14c-6. See Am. Compl. ¶¶ 147–50; [ECF No. 43 at 13–16]. At the same time, Plaintiffs are now pursuing rescission of the reverse stock split, rescissory damages, and remedies for Defendants' purported breaches of fiduciary duty. See Am. Compl. ¶¶ 170, 173. As such, Plaintiffs cannot reasonably maintain that the purported violations of state law claims are currently "irredressable," which the Supreme Court has indicated would be required to demonstrate causation of damages on such a theory. See Virginia Bankshares, 501 U.S. at 1108. Plaintiffs' claim for equitable relief based upon some purported partial reduction in the odds of obtaining state law remedies for Defendants' violation of their duties is exactly the sort of hazy theory of causation that the Supreme Court rejected in Virginia Bankshares, 501 U.S. at 1106–08.

Because the Court does not find that an implied private cause of action exists for minority shareholders under Section 14(c), and further that to the extent one does exist, Plaintiffs have not alleged causation sufficient to support such a claim, Count I of the Amended Complaint will be dismissed with prejudice.

### B. Jurisdiction

Under 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim under [the supplemental jurisdiction statute] if— . . . (3) the district

court has dismissed all claims over which it has original jurisdiction." "In determining whether to retain jurisdiction on such an occasion, the court must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity." Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 48 (1st Cir. 2012). The decision "is a 'pragmatic and case-specific' one." Id. (citing Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996)).

Here, Plaintiffs have already amended their complaint once, and the Court is dismissing their sole federal claim with prejudice. This action remains in the early stages of litigation and, to the Court's knowledge, no discovery has occurred. Because the Court is dismissing the sole federal cause of action on the ground that Plaintiffs lack a federal cause of action on the facts asserted, the Court has found it unnecessary to expound upon Plaintiffs' allegations concerning the independence of the BBC's directors, their alleged breach of fiduciary duties, or the lack of procedural fairness in detail. The Court will therefore dismiss the Amended Complaint with leave to refile the state law claims in a court of appropriate jurisdiction and leaves passing on the sufficiency of those claims to that court.

## IV. CONCLUSION

Accordingly, the motions to dismiss [ECF Nos. 39, 41] are **GRANTED IN PART**. Count I, violation of Section 14(c) of the Exchange Act and Rule 14c-6 is **DISMISSED** with prejudice. The remaining claims are **DISMISSED** with leave to refile in a Court of appropriate jurisdiction.

**SO ORDERED.**

July 29, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE